May it please the court, my name is Mark Meyer, I'm a CJA panel attorney from Great Falls, Montana, representing the appellant Juvenile Male, initials HB. My client was charged in an information with aiding and abetting another Juvenile Male, initials WB, in committing aggravated sexual abuse, specifically knowingly using force to cause the victim, whose initials were TW, to engage in a sexual act in violation of 18 U.S.C. 2241. Alright, we've read your excellent briefs, know the facts, and my question simply is, why doesn't the evidence present a constitute use of force? We have a rational fact finder seems to me to conclude that WB's weight on top of TTW, combined with his efforts to silence TTW by covering her mouth while having sex with her, and HB's effort to physically restrain TTW by holding her right leg, amounted to evidence of sufficient force, and especially, it's bolstered by the record from the sexual assault examination, taken soon after the offense, which noted that TTW had a fresh bruise on her left arm following the incident. Why isn't this use of force? The use of force, Your Honor, is two-fold. One, there's no evidence that there was use of force to commence the sexual act itself. TW's testimony was that she came to the residence where the incident took place, knocked on the door, and then blacked out from intoxication. All right, but you have to go with all the inferences that favor the verdict. And she also testified, didn't she, at some point, I told them to stop. And I think in addition to what Judge Nelson has stated, I think one of the things is there are two of them. She's one, two, one. That, you know. Correct. Which is different than an assault with one-on-one. Correct. But the offense charged the knowing use of force to engage in the sexual act, as against my client, HB. Her testimony was when she awoke, the other juvenile male was on top of her having sex with her, and my client was laying on her right side with his hand on her right leg. And said, I get divs. Yes, Your Honor. Is that the usual language of voluntary sexual conduct? I hold him on the leg and I get divs second in line? The question is not whether it's voluntary. The question is the use of force, right? Correct. And the testimony of the victim is consistent, as I pointed out in my brief, with HB coming into the room while the other two were having sex, laying down, putting his hand on her leg and saying, I've got divs. That, under her testimony that she presented at trial, that scenario is equally plausible. Also, the other evidence as far as... What about throwing the blanket over when the grandfather comes in and interrupts the interlude? The testimony, there was disputing testimony with respect to those facts, Your Honor. All right, but it's not disputed after, you know, obviously you have to, the court obviously resolved that in favor of finding force. It's after a trial, right? That's true, Your Honor. We also believe the testimony, though, from the victim herself doesn't reflect that once she awoke and indicated a desire, you know, asked them what they were doing, that the sex continued past that particular point. Her testimony was she awoke, she was crying, she wanted her clothes back. And shortly thereafter, the boy's grandfather, Alphonse Byrd, came into the room to see what... He thought he heard a noise. The boy said there was nothing, fell to the floor, and he left the room. And there's no testimony that, you know, once she awoke and began crying, that the sexual acts continued past that particular point. And that, you know, HB's involvement was a use of force that enabled or assisted the other juvenile to engage in the sexual act. Point to page 36 in the record, Your Honors, where in response to the court's direct question of, were you doing anything to stop WB from what he was doing, the response was, no, I was just trying to get my stuff and leave. I told him, WB, to get off me, that I wanted my clothes. There's simply no evidence that the sex continued after that point in time, shortly after TW awoke and made her intentions known. And so it's... Well, just a minute. What are you saying? Let's assume that's the correct interpretation of the evidence, that, say, you know, the act stopped at that point. Does that necessarily mean that up to that point no force was used? It doesn't, does it? There's no evidence that that force was used. As I pointed out in my brief, certainly the evidence would point to a violation of 2242, that the victim's inability to consent to sex or to decline participation in sex under the fast horse decision. The evidence would satisfy that, but the government didn't charge that. The government charged the knowing use of force to engage in the sexual act under 2241. And it's our position, Your Honors, that the evidence to support the conviction against HB for the knowing use of force to assist the other juvenile male to engage in the sexual act is not present. Well, just a minute now. Tell me again, then, what about the testimony that your client, I guess you can call him the hater and embedder, held her leg down? Isn't there a testimony or finding to that effect? There is testimony. She did make a statement that the hater and embedder's hand was on my leg, held my leg down. Yes. Isn't that the use of force? There's two ways to look at it. One is it's use of force. The other is he happened to just put his hand there. That's correct, Your Honor. And the prosecutor is entitled to all inferences in favor of the verdict. So isn't that enough? I get back to my initial point. The evidence as far as when the sexual intercourse began, there's no evidence that the use of force was present there on the hater and embedder's part, and that under the Archdale decision that actual showing of actual force is necessary to satisfy that. Does it say that it has to be at the beginning and it can't be during? Does that case hold for that proposition? It does not, Your Honor. Okay. Do you have a case that holds for that proposition that it has to be right at the outset? I do not, Your Honor. Okay. And if there's no other questions, Your Honor, I guess I'd like to reserve the remainder of my time. Thank you. Thank you. Okay. Please, the court, counsel. My name is Laura Weiss. I'm the EOSA from Great Falls, Montana, who prosecuted or who initiated this juvenile matter. I'd first like to start with some comments made previously that I'd like to address. You referenced Archdale. And Archdale essentially held that it's sufficient evidence of force where the defendant got on top of her, this is quotes, got on top of her and, quote, put his thing inside her. And so they're actually, Archdale in addition to Fulton, which both come from the circuit, support the idea that an individual who uses their body weight on top of a victim is sufficient to satisfy the force element. And so when you look at that force element. Is there a case that holds that? Conceptually, both Archdale and Fulton do. Would you say conceptually? Yes. Well, you see, my point is this. I mean, whatever, you know, you could say is force that's, you know, just a natural part of the act itself is not the extra force that the statute requires, is it? No, the statute requires some force other than, I'll just call it the usual force that's involved in the act. You're correct. And so when you look at that force. And why isn't lying on top of her just part of the usual act? In looking at the definition of force, you see, I will answer your question, I'm just sort of putting it into the context of that definition, that it's force sufficient to overcome, restrain, or injure a person. And so when you look at the context of the, I'm sorry, when you look at the acts of WB, you see, I think, two of those, which is overcoming and restraining. There's testimony from the victim that he was on top of her and that she had asked him to stop. I don't think, you're not answering my question. I don't think, in other words, force that's a natural part of the act or can be a natural part of the act is not the force that's required by the statute. No, the statute doesn't require just that rape be committed, that rape be committed with the use of force. So that must be force in addition to the force that's involved in the act itself. I agree with you, but I think when you look at Archdale and you look at Fulton, this circuit has not melded necessarily, but has indicated that when someone is on top of someone using their weight, the element of force to overcome an individual is satisfied. May I ask a question then? If just lying on top is enough to constitute force, how is aggravated sexual abuse distinguishable from the lesser offense of sexual abuse? I think this is what opposing counsel was alluding to when he said they got him under the wrong statute. What is your response? I think I would go back to the case law. Again, Fulton, Archdale, and then Allery. Allery actually considered a very similar situation. It was a prosecution under 2241. The individual was asleep, and the victim woke to find the defendant having sex with her. He was on top of her. She pushed him off, made efforts to push him off, and the court found that that was sufficient force used, the laying on top of the individual and then the assertions by the victim to get the individual off of her. And so you go back to the facts of this case, very similar situation, where she wakes up, she finds the defendant on top of her, tells him to stop, tries to get him off, is crying. He covers her mouth, another indication of force. Does that make the big difference in this case, the fact that he covers her mouth? I think it's part of it. If you're talking about force overcoming someone, restraining them, whether it's physical or restraining them from verbalizing their non-station. Well, let me ask you, there's the pros. There's also, I mentioned with appellant's counsel about the fact that there's two as opposed to one. Is that a factor? It is a factor, and there's actually forces manifest through both of them. You've got the physical acts of WB, and then you've got HB, who is not just placing his hand on her leg. The testimony from the victim, from the medical personnel in the sexual assault exam kit, that, let me just read to you from that account. It's very short. The medical statements, this is page 174 of the excerpt of record 59. Was physical restraint used? And the quote is, held down. And then the next question in the form is holding or pinching, and the written response, in quotes, is holding legs apart. Not only does HB manifest his intent through his actions, but his words also manifest that intent, that he's got dibs or he's got next. Where's the bruise? The bruise was on her arm, I believe, and it was described as fresh. I think you were accurate in your description. Is the meaning of force under this statute an issue that you encounter frequently? Is there a need for publication in this area? It is an area that I encounter frequently, particularly in Indian Country cases and the 2241 cases. I think that the law in the Ninth Circuit is clear as to the subcategories of force. That is, force sufficient to overcome, restrain, or injure a person. I certainly don't think publication would hurt. So are you saying in Indian cases that you frequently encounter the decision whether to charge under 2241 or 2242? Yes. This is not an unusual situation? You know, I'm approximately two years on the job, and so I would say the percentage of cases that I encounter that are sexual assaults is somewhere between 30% and 40%, and it certainly is a decision that is contemplated. And it's a challenge when you're looking at the facts and you're looking at the discovery. So I would say, yes, it's something that we do encounter. I think in regard to your question about publication, and I'll be short, I do think that there is some, there is not necessarily a blending, but when you're talking about rape, as Judge Tashima mentioned, the idea that force is inherent. But I think the real factual reality of this case is that when someone puts their body weight on top of another person, it's covering their mouth, you've got another person holding their leg, and the person is indicating their intent to participate. The verbal participation is not part of that force, but when you've got these physical acts by two people against one person, using someone's weight on top, she did not have the opportunity to get up. That's why she said on page 36 of Exhibition Record 59, did you try to stop him? Yes. How did you stop him? I told him to get off me. The force used against her was sufficient enough that she had to try to tell him to get off of her. That is force. Okay. Well, it would appear that some of these cases, that they fairly frequently involve intoxicated individuals as well. That's correct. This was a juvenile adjudication, so there was no jury trial. Did the district court make any findings of fact? It certainly weighed the credibility of the testimony, and so in rendering its disposition, it certainly judged the credibility of the individual. So the answer is no? Yes. Sorry, go ahead. When you say yes, do you mean no? When I say no, I think I mean yes. Were there any findings, yes or no? Yes. And where were the findings? Consult the excerpts of record. Could he have been tried as an adult? It's possible, but the standard is not done. But if he had been tried as an adult, he could have been looking at 20 years in prison? Absolutely. And in particular, in the aiding and abetting, it's a, as you know, a breed of the actual substantive offense. It is on, it's excerpts of record 59, and it begins on page 166. 166? Yes, sir. This is the trial transfer, right? Yes, and, you know, I think this is worth correcting. This is, these juvenile adjudications are civil matters, and so the court is making a determination of guilt or adjudication or a lack of adjudication, and so I think the lexicon is just slightly altered. Yes, it's not the same as criminal. Correct. I apologize for causing any confusion. So then it's 166 almost to the end of his transcript, isn't it? Yes, sir. All right, thank you. All right, your time is basically up. Thank you. Does any of the panel have additional questions? No. All right, thank you. A few brief points, Your Honors. Looking back, Archdale and Fulton certainly required that the object of the force must be to obtain sex and that it must be a physical force sufficient to overcome or restrain the victim. And here the testimony, H.B.'s placing his hand on her leg simply doesn't rise to the physical force sufficient to overcome or restrain the victim in that. What about covering her mouth? The testimony on that, Your Honor, wasn't. Just so that you don't cry out, so that you don't make any noise. And there was, obviously the grandfather came in, they put her, she's under the, they're on top of her, she's under a blanket, and her mouth is covered and her hand on the leg. I think the testimony was that H.B., I ate her in the bed, I was sitting on the bed, he wasn't laying on top of her, and it's certainly the sexual act had terminated prior to putting the hand over her mouth and that the sexual act had completed certainly by the time the grandfather came into the bedroom. Was that her testimony? I thought she said it continued on while the grandfather was there. No, I don't believe that's correct, Your Honor. I believe that it was she awoke shortly after awaking and telling W.B. to stop, that shortly after that the grandfather came into the room. Another point, Your Honor, with respect to the question on the presence of a bruise on her arm, certainly the young lady was highly intoxicated, walking around, there was no medical testimony linking the bruise to the specific sexual assault that was committed. Only, well, one inference is it's fresh, it's after a sexual assault. The other inference is what you would argue is she could have gotten it anywhere. Correct, Your Honor. As a result of this adjudication, the government gets all those inferences. That's the bad news. That is your honor. Also, just the Allery case certainly is distinguishable in the fact that the victim there tried to escape. The defendant threw her back on the bed, grabbed her hair, and there was additional testimony or evidence of force used, and so that case we would argue is distinguishable. Were you the lawyer on the case at the time? Yes, Your Honor. Well, I know why your client may not be grateful in terms of, and I know that you argued that the sentence that you made said that it was punitive, that it wasn't restorative and all of that. But, you know, from the outside looking in, that perhaps your client should have written a thank you note to the judge for only getting 18 months. I would not minimize your advocacy in this situation, regardless of how this case comes out, because it seems to me that you did a pretty good job. Thank you, Your Honor. All right, this matter will stand submitted. In light of the length of the calendar, the Court is going to take a short recess at this time. Approximately ten minutes, but if you're the next one up, I would say don't go too far. Go to the restroom and come back. Thanks.
judges: Nelson, Tashima, Callahan